OPINION OF THE COURT
Alan D. Oshrin, J.
Petitioner’s CPLR article 78 proceeding to direct the respondents to make application to the court pursuant to 14 NYCRR 541.9 (l) and CPL 330.20 (10), for an order authorizing Kings Park Psychiatric Center to allow Albert F. to leave the *840 grounds of said psychiatric center for unescorted furloughs in accordance with the application for such furloughs submitted to the respondents by Kings Park Psychiatric Center in or about March 1995 is determined as provided herein; and it is further ordered that the respondents’ CPLR 3211 (a) (7) and 7804 (f) motion to dismiss is denied; and it is further ordered that the petitioner’s CPLR 7804 (f) and 3025 (d) motion to amend the petition is denied.
Albert F., the petitioner in this article 78 proceeding, a patient at the Kings Park Psychiatric Center (hereinafter Kings Park), placed there pursuant to CPL 330.20 (11), seeks to have this court direct the Commissioner of the New York State Office of Mental Health and the Director of the Bureau of Forensic Services to make application to the County Court, Criminal Term, pursuant to 14 NYCRR 541.9 (l) and CPL 330.20 (10), for an order authorizing Kings Park to allow him to leave the grounds of the psychiatric center for unescorted furloughs in accordance with the application for such furloughs submitted to the respondents by Kings Park in March of 1995. The petitioner argues that in March 1995 his treatment team, which consisted of his treating psychiatrist and psychologist and their supervising psychiatrist, his psychiatric social worker and his psychiatric nurse, made a written recommendation to the Kings Park Hospital Forensic Committee for unescorted furloughs for the petitioner in accordance with 14 NYCRR 541.9 (b); that the Hospital Forensic Committee concurred with the treatment team that the petitioner is clinically suitable for unescorted furloughs and that the granting of such privileges would be consistent with the safety of the public and of the petitioner, and approved the unescorted furlough application on March 20, 1995. The petitioner further argues that in accordance with 14 NYCRR 541.9 (k), the Clinical Director submitted the Hospital Forensic Committee’s application for unescorted furloughs to the Bureau of Forensic Services of the New York State Office of Mental Health for approval by the Director of Forensic Services; that Joel Dvoskin, Ph.D., serving as the Acting Commissioner of Office of Mental Health and the Director of the Bureau of Forensic Services, approved the furlough application in early May 1995, pending confirmation by an independent forensic psychiatrist that furloughs are clinically warranted and that the granting of such privileges would be consistent with the safety of the public and of petitioner; that Dr. Dvoskin appointed Marc Tarle, M.D., for this purpose; that Dr. Tarle examined the petitioner on August *841 31, 1995 and submitted his report to the Bureau of Forensic Services on November 14, 1995, in which he concurred with the petitioner’s treatment team, the Hospital Forensic Committee, the Clinical Director of Kings Park and the Bureau of Forensic Services that the granting of furloughs would be consistent with the safety and welfare of the public and of petitioner; and that on or about November 14,1995 the Bureau of Forensic Services gave final approval of the furlough application. The petitioner argues that all of this having been accomplished, it was mandatory that the Director of the Bureau of Forensic Services make application to the Criminal Court for an order authorizing Kings Park to allow him to leave the grounds of the psychiatric center for unescorted furloughs. The court notes at this juncture that the petitioner submitted no documentary evidence to support these arguments.
The respondents make several arguments. One, that the application for a furlough order is a discretionary function and as such, mandamus does not lie. Second, that notwithstanding the regulatory language delegating authority to the Director of Forensic Services, the Commissioner of Mental Health has final authority to approve or disapprove a furlough application and, therefore, the fact that the Director of Forensic Services may have approved an application for a furlough does not mean that the application for a furlough order must be made to the appropriate Criminal Court.
CPL 330.20 (10) provides in pertinent part: "Furlough order. The commissioner may apply for a furlough order, pursuant to this subdivision, when a defendant is in his custody pursuant to a commitment order, recommitment order, or retention order and the commissioner is of the view that, consistent with the public safety and welfare of the community and the defendant, the clinical condition of the defendant warrants a granting of the privileges authorized by a furlough order.” Section 7.09 (b) of the Mental Hygiene Law provides that the Commissioner, as the head of the Department of Mental Health, may adopt regulations necessary and proper to implement any matter under his jurisdiction. Pursuant to this statutory authority, the Commissioner adopted part 541 of the rules of the Office of Mental Health (14 NYCRR), which is entitled "Defendants Committed to the Custody of the Commissioner Pursuant to CPL Section 330.20”.
Under part 541 "Commissioner” means the New York State Commissioner of Mental Health (14 NYCRR 541.1 [d]) and "director of forensic services” means the New York State Direc *842 tor of Forensic Services designated to act on behalf of the Commissioner for purposes of this part (14 NYCRR 541.1 [h]).
Section 541.6 (d) provides: "The Director of Forensic Services shall apply for a furlough order only if the current psychiatric reports support the view that issuance of the order is warranted by the clinical condition of the defendant and would be consistent with the public safety and welfare of the community and defendant. The treatment team leader or a psychiatrist or psychologist familiar with the defendant’s current mental condition and case history shall be prepared to testify in support of the application for a furlough order. The Director of Forensic Services shall make recommendations of terms and conditions to the court.” Section 541.9 (/) provides: "The Director of Forensic Services shall have responsibility for applying to the court for a furlough order, transfer order, retention order which is applied for in conjunction with a transfer order, or release order. If the recommendations of the committee and the clinical director are not unanimous, or if he or she disagrees with them, the Director of Forensic Services may designate another psychiatrist or psychologist to examine the defendant.” Finally, section 7.09 (a) of the Mental Hygiene Law provides in pertinent part: "The commissioner shall exercise all powers vested in the office. He may delegate any function, power, or duty assigned to him or to the office of mental health to a director of a facility operated by such office or to any other officer or employee of such office, unless otherwise provided by law.”
At the outset the court recognizes that an administrative agency such as the Office of Mental Health may not create rules or regulations which are out of harmony with a statute (see, Ten Hoeve v Board of Educ., 97 AD2d 678 [1983], revd on other grounds 64 NY2d 1036 [1985]; see also, State Div. of Human Rights v Le Roy Cent. School Dist., 107 AD2d 153 [1985], lv denied 65 NY2d 610 [1985]). For the reasons discussed below the court is satisfied that the means chosen by the Commissioner of Mental Health by promulgating part 541 to effectuate the statutory directive as contained in CPL 330.20 (10) is consistent with the manifestation of legislative intent (see, Matter of Bernstein v Toia, 43 NY2d 437 [1977]) notwithstanding that the language of the regulation does not mirror the language of the statute. As noted above, CPL 330.20 (10) provides that the Commissioner "may” apply for a furlough order if he is of the view that a granting of privileges is consistent with the public safety and welfare of the community and the defendant and *843 the clinical condition of the defendant. Also as noted above, the Commissioner is authorized by statute to adopt regulations to implement any matter under his jurisdiction and the Commissioner adopted part 541 to implement his statutory duty under CPL 330.20 (10).
Under part 541 the Commissioner has designated the Director of Forensic Services to act on his behalf and under section 541.6 (d) has provided that the director "shall” apply for a furlough order "only if’ the order is warranted by the clinical condition of the defendant and would be consistent with the public safety and welfare of the community and the defendant. Inasmuch as the Commissioner is empowered to adopt rules for the operation of matters under his jurisdiction and inasmuch as, as developed below, "shall” and "may” are not determinative of a mandatory effect and a permissive effect respectively, the court is satisfied that the Commissioner’s adopting of part 541 is consistent with the Legislature’s intent in enacting CPL 330.20 (10). Further, inasmuch as the regulation furnishes the operational particulars for the general directive as contained in the statute, the court’s analysis will be focused upon the regulation.
Reading the above-referenced statutes and regulations together it is evident from their plain language that the Commissioner of Mental Health has delegated his functions, powers and duties under CPL 330.20, as set forth in part 541 of the rules for the Office of Mental Health, to the Director of Forensic Services and that the Director of Forensic Services is designated to act on behalf of the Commissioner for the purposes of part 541. The respondents’ argument that the Commissioner retains final approval authority over furlough applications is not supported by the plain language of the statutory and regulatory scheme referenced above. Had it been the intention of the Commissioner to limit the Director of Forensic Services’ ability or authority to act on behalf of the Commissioner for the purposes of part 541 the Commissioner could have set forth such limitations in the regulations he adopted. This was not done. Accordingly, it is the responsibility of the Director of Forensic Services, who is designated to act on behalf of the Commissioner, and not the Commissioner himself, to apply to the court for a furlough order for a defendant committed to the Commissioner’s custody pursuant to CPL 330.20.
Having determined who is to apply to the court for a furlough order, the court will now address the issue of whether mandamus will lie. CPLR article 78 relief in the nature of *844 mandamus will not be awarded to compel an act in respect to which the officer may exercise judgment or discretion (see, Matter of Crain Communications v Hughes, 74 NY2d 626 [1989]; Matter of Gimprich v Board of Educ., 306 NY 401 [1954]). Further, when a decision involves the balancing of competing interests, a measure of discretion is obviously involved and mandamus is unavailable (see, Matter of Crain Communications v Hughes, 74 NY2d 626, supra). As noted above, section 541.6 (d) provides that "[t]he Director of Forensic Services shall apply for a furlough order only if the current psychiatric reports support the view that issuance of the order is warranted by the clinical condition of the defendant and would be consistent with the public safety and welfare of the community and defendant”.
It is an established rule of statutory construction and interpretation that the terms "shall” and "may” are not determinative of a mandatory effect and a permissive effect respectively, and the court is to look to the statute as a whole (not word by word), its context, the purpose sought to be served and surrounding facts and circumstances to ascertain whether a term should have a permissive or mandatory effect (see generally, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 171, 177 [a], [b], [c]; People v Herne, 110 Misc 2d 152 [1981]; Matter of Jacqueline J., 74 Misc 2d 254 [1973]; Matter of Evans v Gardner, 71 Misc 2d 283 [1972]; Lavanant v Lovelace, 68 Misc 2d 734 [1971], revd on other grounds 71 Misc 2d 974 [1972]; Matter of Costello, 202 Misc 51 [1951]). Particularly when the term "shall” is accompanied by ameliorating or qualifying language or showing of another purpose, it will be viewed as discretionary rather than mandatory (see, Matter of Mulligan v Murphy, 19 AD2d 218 [1963]; Akers Motor Lines v City of New York, 72 Misc 2d 751 [1972]).
Although the term "shall” before "apply” in section 541.6 (d), of itself, need not be read as giving a mandatory effect, and although the "only if’ language is such ameliorating or qualifying language as to suggest a permissive or discretionary effect, the court must read the regulation as a whole, rather than word by word in its context and in view of the purpose sought to be served and as such finds as follows. From the plain language of the regulation if each of two conditions are satisfied it is mandatory that the Director of Forensic Services make an application to the court for a furlough order. If the current psychiatric reports support the view that issuance of a furlough order is warranted by the clinical condition of the defendant *845 and if the furlough privileges would be consistent with the public safety and welfare of the community and the defendant, it is mandatory that the Director of Forensic Services make an application to the court for a furlough order. If either of these conditions are not satisfied it would be mandatory that the Director of Forensic Services not make an application to the court for a furlough order.
The discretionary aspect of the process is limited to the Director of Forensic Services’ determination as to each condition. If the Director of Forensic Services determines that the psychiatric reports submitted to him, or such reports in conjunction with a confirmation by an independent forensic psychiatrist support the view that issuance of a furlough order is warranted by the clinical condition of the defendant then, in his discretion, the first condition would be satisfied. If the Director of Forensic Services determines upon the information presented to him that the granting of furlough privileges would be consistent with the public safety and welfare of the community and the defendant then, in his discretion, the second condition would be satisfied. If in the Director of Forensic Services’ discretion each condition has been satisfied then it would be mandatory that the application be made for a furlough order. Should the Director of Forensic Services elect not to do so, then the CPLR article 78 relief of mandamus would be available.
As noted above the petitioner submitted no documentary evidence to support the arguments that his treatment team recommended the unescorted furloughs; that the Hospital Forensic Committee concurred in the recommendation; that the Clinical Director approved the unescorted furlough application on March 20, 1995; that the Director of Forensic Services approved the furlough application in May of 1995, pending confirmation by an independent forensic psychiatrist; that such confirmation occurred, and that in November of 1995 the Bureau of Forensic Services gave final approval to the furlough application. Accordingly, within 45 days of the date of this order, the petitioner is to furnish the court with certified copies of each and every written recommendation, report or approval referred to on the within motion. Particularly, the petitioner is to furnish the court with a certified copy of the recommendation, report or approval of the Director of Forensic Services as pertains to the petitioner’s privilege for unescorted furloughs. Additionally, inasmuch as the recommendation of the petitioner’s treatment team which started this entire process is at *846 minimum, 14 months out of date, this court requires that the treatment team reexamine the petitioner and update its recommendation, and that each level of recommendation and approval be updated as well. The petitioner is to furnish the court with certified copies of each of these updated recommendation reports or approvals within 90 days of the date of this order.
Consistent with the court’s findings herein, in the event that the petitioner is able to establish by the submission of documentary evidence that the Director of Forensic Services upon the updated reports, recommendations and approvals has, in fact, determined both that the current psychiatric reports support the view that issuance of the unescorted furlough order is warranted by the clinical condition of the defendant and that the unescorted furlough privilege would be consistent with the public safety and welfare of the community and the defendant, this court will direct the Director of Forensic Services to make the appropriate application for an unescorted furlough order to the appropriate County Court, Criminal Term. In concluding the court observes that upon the submission of the documentary evidence directed herein this court will strictly scrutinize the nature and scope of the Director of Forensic Services’ investigation and findings. This court will not find acceptable the Director of Forensic Services’ pro forma approval based upon the recommendations below. It is the duty of the Director of Forensic Services to determine whether the current psychiatric reports support the view that issuance of the unescorted furlough order is warranted by the clinical condition of the defendant and whether the unescorted furlough privilege would be consistent with the public safety and welfare of the community and the defendant. The court expects that duty to be carried out with the care, skill and attention it deserves. The court expects that any such approval by the Director of Forensic Services will have a fully documented factual basis as to each condition as to which he must be satisfied. The court intends to review the material submitted to ascertain whether there has been compliance with the regulatory mandate.